UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRISPIN M. C.,<br><br>Petitioner,<br><br>v.<br><br>KRISTI NOEM, Secretary of the United States Department of Homeland Security; PAMELA BONDI, Attorney General of the United States; SERGIO ALBARRAN, Acting Field Office Director of the San Francisco Immigration and Customs Enforcement Office; TODD M. LYONS, Acting Director of United States Immigration and Customs Enforcement; TONYA ANDREWS, Facility Administrator of Golden State Annex Detention Facility,<br><br>Respondents. | No. 1:25-cv-01487-KES-HBK (HC)<br><br>ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION<br><br>Doc. 8 |

This habeas action concerns the detention of petitioner Crispin M. C., a noncitizen who has lived in the United States for over twenty-five years. Petitioner is being detained without the opportunity for a bond hearing based on the government's new interpretation of 8 U.S.C. § 1225(b)(2)(A) as mandating detention for all noncitizens present in the United States without admission.[1] This matter is before the Court on petitioner's motion for temporary restraining order. Doc. 8. For the reasons explained below, petitioner's motion for temporary restraining

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits petitioner's full name, using only his first name and last initial, to protect sensitive personal information. *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

order, which the Court converts to a motion for preliminary injunction, is granted.

## I.   Background[2]

Petitioner is a 48-year-old citizen of Mexico who entered the United States without inspection or admission over twenty-five years ago.[3]  Doc. 1 at ¶ 39;  Doc. 9-1, Jaimes Decl. at ¶ 6.  Since he entered, petitioner has established significant ties in the United States.  He is married to a U.S. citizen and is the father of three U.S. citizen children and three U.S. citizen stepchildren.  Doc. 1 at ¶ 42.  He owns a small business which provides gardening services, and he also works for a larger landscaping company.  *Id.* ¶ 43.  He is the provider for his family, and they live together in Bakersfield, California.  *Id.* ¶ 42.  Respondents do not dispute petitioner's assertion that he has never been arrested or charged for committing a crime.  *Id.* ¶ 43; *see* Doc. 9.

It appears from the record that petitioner's first contact with immigration authorities was in March 2025, when he filed a Form I-485, Application to Register Permanent Residence or Adjust Status, with United States Citizenship and Immigration Services ("USCIS").  Doc. 9-1, Jaimes Decl. at ¶ 7.  His wife filed a Form I-130, Petition for Alien Relative, in April 2025, and it was approved several months later.  Doc. 1-3, Perez Decl., Ex. B.  Petitioner attended his first interview for his Form I-485 application with USCIS on September 16, 2025, and was told to return for a second interview on September 30, 2025.  Doc. 1-3, Perez Decl. at ¶ 14.

ICE arrested petitioner on a warrant at his second interview with USCIS on September 30, 2025.  Doc. 9-1, Jaimes Decl. at ¶ 9; Doc. 9-1, Ex. 1 at 3 (stating that "an arrest warrant was issued for" petitioner).  ICE provided petitioner with a notice to appear for removal proceedings in immigration court.  Doc. 9-1, Jaimes Decl. at ¶ 10.  The notice to appear charges petitioner as inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) as "an alien present in the United States who

---

[2] This section includes information from petitioner's verified petition and the parties' other filings.  A court "may treat the allegations of a verified . . . petition [for writ of habeas corpus] as an affidavit." *L. v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003) (citing *McElyea v. Babbitt*, 833 F.2d 196, 197–98 (9th Cir. 1987)).

[3] Petitioner asserts that he entered the United States in 1993, when he was sixteen years old, while respondents assert that he entered in 1998.  *See* Doc. 1-3, Perez Decl. at ¶ 12; Doc. 9-1, Jaimes Decl. at ¶ 6.

2

1  has not been admitted or paroled." Doc. 9-3, Ex. 2; *see* 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien
2  present in the United States without being admitted or paroled, or who arrives in the United States
3  at any time or place other than as designated by the Attorney General, is inadmissible.").
4  Petitioner is detained at Golden State Annex Detention Facility.  Doc. 1 at ¶ 1.  Petitioner's
5  detention creates a hardship for his family given that he is the provider for his family.  *See* Doc.
6  1-3, Perez Decl. at ¶¶ 20–21.  He reports that his wife and children must use the family's
7  emergency savings to support themselves in his absence, and those savings are quickly depleting.
8  *Id.*

9  On October 15, 2025, petitioner appeared for his first master calendar hearing in his
10 removal proceedings and requested that the immigration judge adjudicate petitioner's Form I-485
11 application.  Doc. 1 at ¶¶ 46–47.  The immigration judge set a merits hearing on November 3,
12 2025.  *Id.*  The immigration judge subsequently recused from the case, and the merits hearing was
13 reset to January 20, 2026.  *Id.* ¶ 48.

14 Several months before his detention, the Department of Homeland Security ("DHS")
15 issued a policy which asserts that all noncitizens who entered the United States without admission
16 or parole are subject to 8 U.S.C. § 1225(b), a statutory provision which mandates detention.  Doc.
17 1 at ¶¶ 27–28.  In *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), the Board of
18 Immigration Appeals agreed with DHS's new reading of the statute.  *Id.*  The declaration of
19 deportation officer Alejandro Jaimes asserts that petitioner is "subject to mandatory detention
20 under INA § 235(b)[,]" which is codified at 8 U.S.C. § 1225(b).  Doc. 9-1, Jaimes Decl. at ¶ 15.

21 Petitioner has filed a petition for writ of habeas corpus and a motion for temporary
22 restraining order, arguing that the application of 8 U.S.C. § 1225(b)(2)(A) to him violates the
23 Immigration and Nationality Act ("INA") and the Due Process Clause.  Docs. 1, 8.  Respondents
24 filed an opposition, Doc. 9, and petitioner filed a reply, Doc. 10.[4]

---

25 [4] Petitioner subsequently filed a "Request for the Court to Grant Habeas."  Doc. 11.  That filing
26 indicates that on November 25, 2025, the United States District Court for the Central District of
   California certified a nationwide class of noncitizens who (1) entered or will enter without
27 inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be
   subject to detention under 8 U.S.C. §§ 1226(c), 1225(b)(1), or 1231 at the time DHS makes an
28 initial custody determination.  *See* Doc. 82, *Maldonado Bautista et al v. Santacruz.*, No. 5:25-cv-

3

## II. Conversion to a Motion for Preliminary Injunction

The Court directed the parties to state their position on whether the motion for temporary restraining order should be converted to a motion for preliminary injunction and whether the parties requested a hearing on the motion. Doc. 7. Neither party objected to converting the motion or requested a hearing. *See* Docs. 9, 10. Given that the standard for issuing a temporary restraining order and a preliminary injunction is substantially the same, *see Stuhlbarg Int'l Sales Co. v. John D. Bush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001), and respondents had notice and opportunity to respond in opposition, *see* Doc. 9, petitioner's motion is converted to a motion for preliminary injunction.

## III. Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20 (citing *Munaf*, 553 U.S. at 689–90; *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 542 (1987); *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311–12 (1982)). "Likelihood of success on the merits is a threshold inquiry and is the most important factor." *Simon v. City & Cnty. of San Francisco*, 135 F.4th 784, 797 (9th Cir. 2025) (quoting *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020)). "[I]f a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

---

01873-SSS-BFM (C.D. Cal. Nov. 25, 2025). The court entered final judgment on December 18, 2025, declaring that members of the class "are detained under 8 U.S.C. § 1226(a)" and vacating the government's policy that required the class members' detention under 8 U.S.C. § 1225(b)(2)(A). Docs. 92, 94, *Maldonado Bautista et al v. Ernesto Santacruz Jr et al.*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal. Dec. 18, 2025). Respondents did not file any response indicating whether petitioner is a member of the class and whether he will receive a bond hearing.

4

**IV.     Discussion**

      **a.  Likelihood of Success on the Merits**

Petitioner argues that 8 U.S.C. § 1225(b)(2)(A) does not apply to him and that he is being unlawfully detained under that provision in violation of the INA and his due process rights. This Court has addressed this issue in previous cases and held that 8 U.S.C. § 1225(b)(2)(A) does not apply to noncitizens, like petitioner, who entered the United States without inspection or admission many years ago. *See, e.g.*, *Guerrero Lepe v. Andrews*, No. 1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910 (E.D. Cal. Sept. 23, 2025). As another recent decision on this issue noted, "[t]he overwhelming majority of courts to address the issue have agreed that Section 1226(a), rather than the mandatory detention provision of Section 1225(b)(2)(A), applies to a noncitizen in Petitioner's position who has resided in the United States for many years." *Aquino v. LaRose*, No. 25-CV-2904-RSH-MMP, 2025 WL 3158676, at *3 (S.D. Cal. Nov. 12, 2025) (collecting cases). The Seventh Circuit recently reached the same conclusion. *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048 (7th Cir. 2025).

Respondents argue that section 1225(b)(2)(A) applies to nearly all noncitizens present in the United States without admission. Section 1225(b)(2)(A) reads: "[I]n the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). And the statute defines an "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C.A. § 1225(a). Respondents argue that because petitioner meets the definition of an "applicant for admission," he is also automatically "seeking admission" and must be detained under section 1225(b)(2)(A). The Court concluded in *Guerrero Lepe*, respondents' interpretation of the statute is unpersuasive because it: (1) disregards the plain meaning of section 1225(b)(2)(A), (2) disregards the relationship between sections 1225 and 1226, (3) would render a recent amendment to section 1226(c) superfluous, and

5

1  (4) is inconsistent with decades of prior statutory interpretation and practice.[5]

2  First, respondents' proposed interpretation of the statute ignores the plain meaning of the phrase "seeking admission." *Martinez v. Hyde*, No. CV 25-11613-BEM, 2025 WL 2084238, at *6 (D. Mass. July 24, 2025). The statute provides for mandatory detention if the examining immigration officer "determines that an *alien seeking admission* is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). The Court agrees with the decisions in *Martinez* and *Lopez Benitez* that the phrase "seeking admission" means the noncitizen must be actively "seeking" "lawful entry." *See Martinez*, 2025 WL 2084238, at *6; *Lopez Benitez*, 2025 WL 2371588, at *7. But petitioner is not actively "seeking" "lawful entry" because he already *entered* the United States over twenty-five years ago. *See Lopez Benitez*, 2025 WL 2371588, at *7; *Lopez-Campos v. Raycraft*, No. 2:25-CV-12486, 2025 WL 2496379, at *6 (E.D. Mich. Aug. 29, 2025).

Respondents have failed to show that, over 30 years after he entered the country, petitioner was actively "seeking admission." The government's "selective reading of the statute . . . ignores its 'seeking admission' language." *Martinez*, 2025 WL 2084238, at *6. "If, as the government argues, [section] 1225(b)(2)(A) was intended to apply to all 'applicant[s] for admission,' there would be no need to include the phrase 'seeking admission' in the statute." *Lopez Benitez*, 2025 WL 2371588, at *6. The rule against surplusage counsels that "'every clause and word of a statute' should have meaning." *See United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) (quoting *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883)); *League of California Cities v. Fed. Commc'ns Comm'n*, 118 F.4th 995, 1019 (9th Cir. 2024)

---

[5] Respondents also argue that the Court should require petitioner to exhaust his administrative remedies by affirmatively seeking a bond hearing in immigration court. Doc. 9 at 5–6. In a case such as this one, the "exhaustion requirement is prudential, rather than jurisdictional," and may be waived "if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)). Respondents take the position that petitioner is subject to 8 U.S.C. § 1225(b)(2)(A) and therefore subject to mandatory detention with no opportunity for a bond hearing. The Court therefore waives the prudential exhaustion requirement.

("The rule against surplusage generally prohibits [a court] from interpreting [a statute] in a way that 'mak[es] a part of it unnecessary.'" (quoting *NLRB v. Aakash, Inc.*, 58 F.4th 1099, 1105 (9th Cir. 2023)). Respondents' position would eliminate the significance of the "seeking admission" language. *See Martinez*, 2025 WL 2084238, at *6; *Lopez Benitez*, 2025 WL 2371588, at *6.

Respondents argue that section 1225(a)(3) demonstrates the "general equivalence" of "applicant for admission" and "seeking admission." Doc. 9 at 9. Section 1225(a)(3) reads: "All aliens (including alien crewmen) who are applicants for admission or otherwise seeking admission or readmission to or transit through the United States shall be inspected by immigration officers." 8 U.S.C. § 1225(a)(3). But the definition of "applicant for admission" in § 1225(a)(1) does not include a non-citizen "seeking admission." *See* 8 U.S.C. § 1225(a)(1); *J.A.M. v. Streeval*, No. 4:25-CV-342 (CDL), 2025 WL 3050094, at *3 (M.D. Ga. Nov. 1, 2025) (noting that "seeking admission" is "not defined in the statute"). As the Seventh Circuit found in rejecting the government's interpretation, "it is Congress's prerogative to define a term however it wishes, and it has chosen to limit the definition of an 'applicant for admission' to 'an alien present in the United States who has not been admitted or who arrives in the United States.'" *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (quoting 8 U.S.C. § 1225(a)(1)). Congress "could easily have included noncitizens who are 'seeking admission' within the definition but elected not to do so." *Id.*; *see also Guerrero Orellana v. Moniz*, No. 25-CV-12664-PBS, 2025 WL 3687757, at *6 (D. Mass. Dec. 19, 2025) ("Yet if all 'applicants for admission' are 'seeking admission,' Congress would not have specified that § 1225(b)(2)(A) applies 'in the case of an alien who is an applicant for admission' and who is 'seeking admission.'"). And the government's "construction would render § 1225(b)(2)(A)'s use of the phrase 'seeking admission' superfluous, violating one of the cardinal rules of statutory construction." *Castañon-Nava*, 161 F.4th at 1061. The Court agrees with this reasoning.[6]

---

[6] In *Al Otro Lado v. Exec. Off. for Immigr. Rev.*, the Ninth Circuit also appeared to recognize that § 1225(a)(3) does not equate the terms "applicant for admission" and "seeking admission." 138 F.4th 1102, 1119 (9th Cir. 2025). The court noted that section 1225 "requires inspection *not only* of 'applicants for admission' *but also* of noncitizens 'otherwise seeking admission or readmission to or transit through the United States.'" *Id.* (quoting 8 U.S.C. § 1225(a)(3)) (emphasis added).

7

1    Second, respondents' argument disregards the broader context of sections 1225 and 1226 in the statutory scheme. As the Seventh Circuit found in *Castañon-Nava*, "the difference in treatment between a noncitizen at the border and one already in the United States fits within the broader context of our immigration law." *Castañon-Nava*, 161 F.4th at 1061. Section 1225 typically applies "at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." *Jennings*, 583 U.S. at 287. And section 1225 "authorizes the Government to detain certain aliens *seeking admission* into the country," whereas section 1226 "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." *Id.* at 289 (emphasis added); *see also Al Otro Lado*, 138 F.4th at 1118 ("The responsibilities of officials with respect to noncitizens at the border are set out in 8 U.S.C. § 1225."). Respondent's interpretation of § 1225(b) violates the "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989).

Third, respondents' application of section 1225(b)(2)(A) to noncitizens already in the country would render superfluous a recent amendment to section 1226(c). *See Gomes*, 2025 WL 1869299, at *5. Although section 1226(a) sets out a discretionary detention scheme, section 1226(c) provides an exception which mandates detention for certain criminal noncitizens. *See* 8 U.S.C. § 1226(c)(1)(E). Section 1226(c)(1)(E), which was added to the statute in 2025 by the Laken Riley Act, mandates detention for any noncitizen (i) who is inadmissible under section 1182(a)(6)(A)(i) as an "alien present in the United States without being admitted or paroled," *and* (ii) who "is charged with, arrested for, convicted of, or admits" to committing certain crimes. 8 U.S.C. § 1226(c)(1)(E) (emphasis added); *see Gomes*, 2025 WL 1869299, at *5 (explaining statutory section). If every "applicant for admission"—which is defined, as relevant here, as an "alien present in the United States who has not been admitted," *see* 8 U.S.C. § 1226(a)(1)—is already subject to mandatory detention under section 1225(b)(2)(A), as respondents contend, there would have been no need for the new section 1226(c)(1)(E). Reading section 1225 as respondents propose would thus render section 1226(c)(1)(E) superfluous. *See*

8

*Gomes*, 2025 WL 1869299, at *5; *Lopez Benitez*, 2025 WL 2371588, at *7; *Romero v. Hyde*, No. CV 25-11631-BEM, 2025 WL 2403827, at *11 (D. Mass. Aug. 19, 2025); *Maldonado v. Olson*, No. 25-CV-3142 (SRN/SGE), 2025 WL 2374411, at *12 (D. Minn. Aug. 15, 2025) ("The Court will not find that Congress passed the Laken Riley Act to 'perform the same work' that was already covered by § 1225(b)(2)."). "When Congress acts to amend a statute, [the Court] presume[s] it intends its amendment to have real and substantial effect," *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995), and "the canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme," *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013).[7]

The government previously applied section 1226(a) to noncitizens, such as petitioner, who entered the country without admission. *See Matter of Yajure Hurtado*, 29 I&N Dec. 216 n.6 (B.I.A. 2025) ("We acknowledge that for years Immigration Judges have conducted [section 1226(a)] bond hearings for aliens who entered the United States without inspection."); Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."); *Martinez*, 2025 WL 2084238, at *6. The government's longstanding practice, under which section 1226(a), and not section 1225(b)(2)(A), would have applied to petitioner's circumstances, is consistent with the text and statutory scheme. *See, e.g.*, *Lopez Benitez*, 2025

---

[7] Respondents argue that Congress passed the Laken Riley Act "to make 'doubly sure' that a subset of noncitizens was subject to mandatory detention by amending § 1226(c), given that the former Immigration and Naturalization Service had long ignored the plain text of § 1225(a)(1) and the IIRIRA mandating such detention." Doc. 9 at 11. This argument is unpersuasive. "When amendments are enacted after an agency interpretation and those amendments are consistent with the agency's interpretation, this . . . is considered an implicit ratification" of the agency interpretation. *Walker Macy LLC v. United States Citizenship & Immigr. Servs.*, 243 F. Supp. 3d 1156, 1171 (D. Or. 2017); *see also Tualatin Valley Builders Supply, Inc. v. United States*, 522 F.3d 937, 942 (9th Cir. 2008) (finding amendments enacted after the IRS published its procedures "suggests that Congress implicitly ratified" the procedures and concluding that the agency's procedures were reasonable). When it passed the Laken Riley Act, Congress implicitly ratified the government's longstanding interpretation of section 1226 as applying broadly to noncitizens present in the United States for many years without admission.

WL 2371588, at *8 (reaching same conclusion).

Respondents also argue that their interpretation is consistent with one of the purposes of IIRIRA, which was to do away with the INA's previous "entry doctrine anomaly." *See* Doc. 9 at 10 (citing *Torres v. Barr*, 976 F.3d 918, 927–29 (9th Cir. 2020)). Under pre-IIRIRA law, "non-citizens who had entered without inspection could take advantage of the greater procedural and substantive rights afforded in deportation proceedings, while non-citizens who presented themselves at a port of entry for inspection were subjected to more summary exclusion proceedings." *Torres*, 976 F.3d at 928 (quoting *Yin Hing Sum*, 602 F.3d at 1100). IIRIRA added section 1225(a)(1) so that "[n]ow, in removal proceedings, the relevant distinction for procedural purposes is whether the immigrant has been lawfully admitted, regardless of actual physical presence." *Id.*

Another court in this circuit has convincingly explained why this statutory change does not support respondents' argument that all aliens present in the United States without admission are subject to mandatory detention:

> Although Defendants correctly point out Congress's concern with the "entry doctrine anomaly," IIRIRA resolved this problem by placing noncitizens "on equal footing in *removal* proceedings under the INA." *Torres*, 976 F.3d at 928 (citation modified) (emphasis added). Thus, when the Ninth Circuit discussed the legislative history surrounding "admission" and "applicant for admission," it applied this background to the greater burden of proof noncitizens living in the United States face in defending against removal after IIRIRA. *See id.* at 928 ("Now, in removal proceedings, the relevant distinction for procedural purposes is whether the immigrant has been lawfully admitted, regardless of actual physical presence."); *id.* (comparing noncitizen's burden of proof when considered an "applicant for admission" under section 1229a(c)(2)(A) with government's burden of proof when noncitizen has been admitted under section 1229a(c)(3)(A)); H.R. Rep. 104-469, pt. 1, at 225 ("[T]he pivotal factor in determining a alien's *status* will be whether or not the alien has been lawfully admitted.") (emphasis added). But creating a level playing field in removal proceedings "says nothing about detention pending the outcome of those proceedings." *Romero,* 2025 WL 2403827, at *12; 8 C.F.R. § 1003.19(d) (noting that an IJ's consideration of requests for "custody or bond . . . shall be separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding").
>
> Nor can Defendants enlarge Congress's stated concern that noncitizens living in the United States had an advantage during *removal* proceedings pre-IIRIRA to an unarticulated aim to mandate

10

> *detention* for all such noncitizens post-IIRIRA. It is easy to conceive of reasons Congress would distinguish between these concepts; for one, noncitizens who have lived for years in this country are more likely to be working in critical industries, parenting U.S. citizen children, or otherwise serving their communities. *See, e.g.*, Dkts. 9; 35; 43; 44; 45 (declarations of named Plaintiff and Bond Denial Class members). The mass detention of these individuals—without regard to flight risk or danger to the public—is far more disruptive to local American economies, families, and communities than the detention of noncitizens who have just crossed the border.

*Rodriguez v. Bostock*, No. 3:25-CV-05240-TMC, 2025 WL 2782499, at *24 (W.D. Wash. Sept. 30, 2025).

In sum, petitioner is likely to succeed on the merits of his claim that he is not subject to mandatory detention under section 1225(b)(2)(A).[8]

### b. Irreparable Harm

Turning to the second *Winter* factor, petitioner has established that he will be irreparably harmed absent a preliminary injunction. "The government has taken the position that in the absence of preliminary injunctive relief, it remains free to subject [petitioner] to mandatory detention under section 1225(b)(2), a provision that is not applicable to [him], and provide [him] with no additional process to challenge [his] detention." *Valencia Zapata v. Kaiser*, No. 25-CV-07492-RFL, 2025 WL 2741654, at *12 (N.D. Cal. Sept. 26, 2025). "Obviously, the [unlawful deprivation] of liberty is a . . . severe form of irreparable injury." *Ferrara v. United States*, 370 F. Supp. 2d 351, 360 (D. Mass. 2005). Thus, the misapplication of section 1225(b) causes "immediate and irreparable injury." Doc. 11 at 9, *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01874-SSS-BFM (C.D. Cal. July 28, 2025); *Valencia Zapata*, 2025 WL 2741654, at *12.

### c. Balance of Hardships and Public Interest

When the government is the nonmoving party, "the last two *Winter* factors merge." *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (internal citations omitted). Although the government has a strong interest in enforcing the immigration laws, the government "cannot reasonably assert that it is harmed in any legally cognizable sense" by being compelled to follow

---

[8] As the Court grants petitioner's requested relief on this basis, for purposes of the present motion the Court need not address petitioner's remaining claims.

11

the law. *Zepeda v. I.NS.,* 753 F.2d 719, 727 (9th Cir. 1983). Moreover, in immigration court, custody hearings are routine and impose a "minimal" cost. *Doe v. Becerra*, No. 2:25-cv-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025). Faced with a choice "between [these minimally costly procedures] and preventable human suffering," the Court concludes "that the balance of hardships tips decidedly in [petitioner's] favor." *Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

The public interest also weighs in petitioner's favor. "The public has a strong interest in upholding procedural protections . . ., and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (citing *Jorge M.F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3) (N.D. Cal. Mar. 1, 2021).

### d. Remedy

The purpose of a preliminary injunction is to return the parties to the status quo ante, which is "not simply [] any situation before the filing of a lawsuit, but instead [] 'the last uncontested status which preceded the pending controversy.'" *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000). Respondents argue that petitioner was detained pursuant to section 1225(b)(2)(A) and has denied that petitioner was detained under section 1226. *See* Doc. 9-1, Jaimes Decl. at ¶ 15 ("Petitioner remains subject to mandatory detention under INA § 235(b)."). As section 1225(b)(2)(A) does not apply to petitioner, petitioner has shown a likelihood of success on his claim that the government may not detain him under that statute. Given that the government does not assert any other basis for petitioner's detention and does not argue that petitioner presents a flight risk or danger, the appropriate remedy is petitioner's immediate release. If the government seeks to re-detain petitioner, it must provide no less than seven (7) days' notice to petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter pursuant to section 1226(a) and its implementing regulations, at which petitioner's eligibility for bond must be considered.

///

///

### V. Conclusion and Order

Accordingly, petitioner's motion for preliminary injunction, Doc. 8, is GRANTED. The Court ORDERS that respondents release petitioner immediately. If the government seeks to re-detain petitioner, it must provide no less than seven (7) days' notice to petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter pursuant to section 1226(a) and its implementing regulations, at which petitioner's eligibility for bond must be considered.

The security bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this, and the government has not established a need to impose a security bond.

Respondents may file an additional brief related to the merits of the petition within 30 days, and petitioner may file a reply brief within 15 days of respondents' brief. Alternatively, the parties may stipulate to a different briefing schedule or to submitting the petition on the merits based on the current record.

This matter is referred to the assigned magistrate judge for further proceedings, including the preparation of findings and recommendations on the petition or other appropriate action.

IT IS SO ORDERED.

Dated:   January 8, 2026

UNITED STATES DISTRICT JUDGE